**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RODERICK HOLLIES** | * | **CIVIL ACTION NO: 19-11592** |
| | * | |
| **VERSUS** | * | |
| | * | **JUDGE GREG G. GUIDRY** |
| **TRANSOCEAN OFFSHORE USA, INC., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., SPENCER OGDEN, INC., AND 6CATS INTERNATIONAL** | * * * * * | **MAG. DANA DOUGLAS** |

______________________________/

**MEMORANDUM IN SUPPORT**
**OF MOTION TO EXCLUDE**
**REPORT AND TESTIMONY OF ROBERT BORISON**

MAY IT PLEASE THE COURT:

Defendant Spencer Ogden, Inc. respectfully moves this Honorable Court to exclude the report and prospective testimony of Mr. Robert E. Borison, Plaintiff Roderick Hollies's ("Hollies") designated expert on marine operations and safety.[1] This is a simple case of someone losing their footing while descending a stairway. Thus, no expert testimony is need to assist the Court and/ or the jury. Further, Mr. Borison's report and prospective testimony do not aid the trier of fact with any scientific, technical, or specialized knowledge, and do not meet the requirements of F.R.E. 702.

## Background

Plaintiff Roderick Hollies ("Hollies") is an experienced roustabout having worked

[1] Exhibit A.

in that capacity for several years prior to beginning his relationship with Spencer Ogden in 2015.[2] He was posted sporadically to short term (three to four week) assignments through Spencer Ogden until April 2018 when he was posted to Transocean's DISCOVERER INDIA. Aboard the DISCOVERER INDIA, he was assigned to generally work with the crane crew under the supervision of the lead crane operator, Randy Yawn, an employee of Transocean.[3] On April 23, 2018, Hollies and the rest of the crane crew were assigned to assist the marine crew moving "actuators" from their position under the deck to the mechanic's shop so the equipment could be tested.[4] An "actuator" is a machine similar to a hydraulic pump of different sizes weighing between 30 and 60 pounds.[5] The actuators had to be carried from the lower deck (sometimes called the "cable trunk area") up one flight of stairs to the main deck where the mechanic's shop was located.[6] Hollies and other members of the crane crew walked up

---

[2] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 22, lines 22-25, page 23, lines 1-10, page 54, lines 6-21).

[3] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 55, lines 8-22 page 56, lines 3-4, page 82, lines 6-9); Exhibit C (Deposition of Randy Yawn, April 6, 2020, page 9, lines 25, page 10, lines 1, page 31, lines 8-9).

[4] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 65, lines 9-13, page 66, lines 22-25, page 67, lines 3, 7-18, page 72, lines 15-25).

[5] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 67, lines 19-21, page 68, lines 1-3, page 83, lines 22-25, page 84, lines 1-13).

[6] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 69, lines 7-22); Exhibit C (Deposition of Randy Yawn, April 6, 2020, page 37, lines 13-14).

and down the stairs several times during the day without incident.[7] In fact, Hollies testified, "I didn't have any problems going up and down the steps."[8] After the mechanic tested the actuators, the crew would carry them back down the stairs to the "cable trunk area."[9] The stairs were adequately lit, the steps were readily seen, wide enough to accommodate his whole foot, had metal, yellow, nonskid treads, and had handrails on both sides.[10] Hollies testified that the stair steps were in "good condition" and that he would have known if they were not in "good condition."[11] In addition, Hollies was wearing proper PPE (personal protection equipment) including new boots with good treads.[12]

At the time of the incident, Hollies was returning from the upper deck after going

---

[7] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 70, lines 7-25, page 71, lines 2-9, 19-25, page 72, lines 1-25, page 73, lines 4-8, page 74, lines 16-19, page 97, lines 1-2); Exhibit C (Deposition of Randy Yawn, April 6, 2020, page 68, lines 12-18, page 70, lines 3-7, page 73, lines 9-13).

[8] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 97, lines 12-13).

[9] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 72, lines 15-25, page 83, lines 22-25, page 84, lines 1-13).

[10] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 75, lines 20-25, page76, lines 1-18, page 77, lines 15-17, page 80, lines 5-25, page 81, lines 3-11, page 100, lines 1-18); Exhibit C (Deposition of Randy Yawn, April 6, 2020, page 38, lines 19-20, page 59, 9-10, page 60, lines 8-11, page 68, lines 9-22, page 69, lines 5-22, page 70, lines 16-18, page 71, lines 19-20).

[11] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 81, lines 8-24).

[12] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 76, lines 23-25, page 77, lines 7-15, page 150, lines 14-16, page 219, lines 18-22, page 220, lines 4-5); Exhibit C (Deposition of Randy Yawn, April 6, 2020, page 48, lines 3-9, page 59, lines 10-11).

to find an impact wrench.[13] On his way back, he stopped and picked up two water bottles and put them in his pocket.[14] He was not carrying anything in his hands and was holding on to the handrail with his right hand.[15] Another roustabout immediately preceded just a few steps ahead of him down the stairs without incident.[16] However, about half way down the steps, Hollies lost his footing and fell. At the time, Hollies did not notice, and did not report, that there was anything on the steps.[17] He also did not report that the stairs were defective in any way or too steep.[18] In two separate post accident statements, Hollies did not state that he slipped on anything but simply stated, "I lost my footing and fell."[19] In hindsight, two years later at his deposition, he testified "I guess something was on the steps."[20] However, he could not identify what, if anything, was on the steps but

---

[13] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 85, lines 3-20).

[14] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 86, lines 15-19, page 113, lines 9-16).

[15] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 78, lines 22-25, page 79, lines 1-25).

[16] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 86, lines 19-25, 11-25, page 102, lines 11-18, page 111, lines 3-9, page 145, lines 13-18).

[17] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 95, lines 19, page 96, lines 1, page 106, lines 7-23). See also Exhibit D - Hollies post accident statement attached to his deposition as Exhibit 8. See also Exhibit E - Hollies second post accident statement attached to his deposition as Exhibit 9.

[18] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 74, lines 13-19).

[19] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 105, lines 17-18, page 113, lines 1-9, 18-23, page 222, lines 17-22, page 223, lines 1-3).

[20] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 88, lines 16-17).

that it could possibly have been water or hydraulic fluid.[21] However, he testified that he did not actually see either water or hydraulic fluid.[22] In fact, he stated, "I didn't see anything on those steps."[23] Transocean immediately began a post accident investigation and inspected the steps. According to Hollies immediate supervisor, the stairs were clean and dry.[24]

Importantly, Hollies has never, not in any pleading and not in his deposition, attributed his fall to the angle, inclination, or steepness of the stairs. Regarding the "steepness" of the stairs, Hollies mentioned in passing one time that the stairs were "steep" and then the following exchange took place in Hollies's deposition:

[Q]: [D]id you ever complain to anybody that the stairs were too steep?

[A] No.

[Q]: Did you ever have difficulty walking down the stairs because, they were according to you, steep?

[A] No.[25]

Further, as stated above, Hollies testified that he could fit his whole foot on the stair steps.

---

[21] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 89, lines 17-25

[22] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 91 lines 24-25, page 92, lines 8-11, 15-25, page 94, lines 11-20).

[23] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 92, lines 25, page 97, lines 4-5, page 100, lines 25, page 101, lines 1-6).

[24] Exhibit C (Deposition of Randy Yawn, April 6, 2020, page 59, lines 9-10, page 69, lines 23-25, page 70, lines 8-13).

[25] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 74, lines 13-19).

The following exchange took place during his deposition:

[Q]: And you didn't have any problem putting your foot on these stair treads, correct?

[A]: No.

[Q]: What size shoe do you wear?

[A]: Twelve.

[Q]: Okay. And with a 12-size shoe – I guess you were wearing boots, steel-toe boots when you were walking up these steps; right?

[A] Size 12.

[Q]: You didn't have any trouble putting your boot on the stairs?

[A]: No.[26]

He also testified that the steps were wide enough to walk down safely.[27] Again, this stairway had been used multiple times throughout the day by the marine crew and the crane crew, including Hollies, without incident or complaint. And, as acknowledged by Hollies in his deposition, sometimes accidents just happen.[28]

Despite the fact that this is a simple case involving losing one's footing while descending stairs, Hollies has submitted the expert report of Robert Borison as his safety

---

[26] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 76, lines 6-18).

[27] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 240, lines 5-17).

[28] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 91, lines 18-22.

expert.[29] In the report, Borison offers two opinions, which will be discussed below in turn.

**Law and Argument**

The burden is on Hollies, as the party offering the expert testimony, to establish that it is admissible.[30] Here, Hollies cannot meet this burden. Expert testimony is admissible at trial when it will "assist the trier of fact to understand the evidence or to determine a fact in issue."[31] Admission of expert reports and testimony is governed by F.R.E. 702 which provides in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, education, or training may testify thereto in the form of an opinion or otherwise.

Thus, according to the Advisory Committee Notes to F.R.E. 702, the basic question as to admitting expert testimony is whether such testimony will assist the trier of fact.[32] If an expert opinion is unhelpful, it should be excluded as superfluous and a waste of time.[33]

If the evidence or issues require scientific, technical or specialized knowledge,

---

[29] Exhibit A.

[30] Moore v. Ashland Chemical, Inc., 151 F.3d 269, 276 (5th Cir. 1998).

[31] Gayle v. Louisiana Dock Co., LLC, 2000 WL 1059815 p. 1 (E.D. La. 07/31/2000) *citing* F.R.E. 702.

[32] Gayle v. Louisiana Dock Co., LLC, 2000 WL 1059815 p.1 (E.D. La. 07/31/2000).

[33] Id.

then the helpfulness of the proposed expert's testimony is evaluated in the light of the United States Supreme Court decision of Daubert v. Merrell Down Pharmaceuticals.[34] However, a Daubert analysis is inappropriate if the proposed expert testimony is unnecessary in the first place.[35] Here, because Borison's opinions are not based on scientific, technical, or specialized knowledge outside the common experience and knowledge of the trier of fact, no Daubert analysis is necessary.

This is a simple case involving a slip and fall down a set of stairs. Spencer Ogden respectfully submits that no expert testimony is needed to determine liability under the facts and circumstances. As one court aptly stated in a similar situation:

> "He simply claims he tripped and fell while attempting to descend the stairs. The expert testimony ... will not be helpful to the (trier of fact)'s determination of whether or not that particular stair posed a trip hazard."[36]

Likewise, in the instant case, Borison's report will not be helpful.

The standard for allowing marine experts to testify was set forth by the United

---

[34] 509 U.S. 579 (1993).

[35] Bouton v. Kim Susan, Inc., 1997 WL 61450 p. 3 (E.D. La. 07/06/1997); See also Alvarado v. Diamond Offshore Management Co., 2011 WL 4948031 p. 3 (E.D. La. 10/18/2011); Oatis v. Diamond Offshore Management Co., 2010 WL 936449 p. 1 (E.D. La. 03/21/2010); Theodile v. Delmar Systems, 2006 WL 1751226 p. 3 (W.D. La. 06/21/2006); Welch v. Noble Drilling (U.S.), Inc., 2005 WL 5950958 (E.D. La. 12/07/2005).

[36] Stonicher v. International Snubbing Services, LLC, 2003 WL 22208577 p. 2 (E.D. La. 08/19/2003).

States Court of Appeals for the Fifth Circuit in Peters v. Five Star Marine Service.[37] Specifically, the Fifth Circuit held that the trial court should exclude the testimony and reports of experts when their opinions are within the realm of the average juror's knowledge and expertise. Here, the simple facts surrounding the Hollies's fall down a flight of stairs are within the understanding of any fact-finder.

Moreover, the report is based simply on Borison's appreciation of the facts underlying the incident culled principally from photographs and deposition testimony. As one court stated in excluding a report under similar circumstances, "None of the opinions expressed are based on any scientific or technical knowledge beyond the understanding of an ordinary person" and "[the expert's opinions] are merely based on his observations of the vessel and review of deposition testimony."[38] Here, the trier of fact can easily review the materials relied on by Borison and come to its own conclusions unaided.

Borison first opines that the stairway was not safe because he estimated that the tread width of the stairs were 5" and, because Hollies has a size 12 foot, he could not fit his whole foot on the step.[39] However, Hollies testified that he could, and did, fit his size 12 foot on the step. In addition, Borison bases his opinion on a photograph of an

[37] 898 F.2d 448 (5th Cir. 1990); See also Theodile v. Delmar Systems, Inc., 2006 WL 1751266 p. 2 (W.D. La. 06/21/2006).

[38] Theodile v. Delmar Systems, Inc., 2006 WL 1751266 p. 2; See also Welch, 2005 WL 5950958 at p. 1[Excluding an expert report where the opinions therein were based simply on an inspection of the accident site] .

[39] Exhibit A - pages 7 and 8.

unidentified individual standing on the stairs.[40] This photograph came from a power point presentation prepared by Transocean as part of its post accident investigation, which is attached as an exhibit hereto.[41] As the Court can see, the individual is turned to face the camera rather than walking down the stairs in a usual manner. The photo does not support Borison's opinion that "[Hollies] would have been required to turn his body and foot to fit onto the tread."[42] Hollies testified that he descended the stairs in a "regular" manner.[43] Certainly, Hollies, not Borison, is in the best position to testify as to the manner in which he actually descended the steps.

The United States Fifth Circuit Court of Appeal has held that when, as here, the expert report conflicts with the testimony of the plaintiff as to the underlying facts of the accident, the report and prospective testimony should be excluded.[44] In addition, to be admissible, expert testimony must be relevant. To the extent that Borison's report

---

[40] Exhibit A - pages 7 and 12.

[41] Exhibit F.

[42] Exhibit A - page 7.

[43] Exhibit B (Deposition of Roderick Hollies, March 12, 2020, page 78, lines 8-21).

[44] Chan v. Coggins, 294 Fed.Appx. 934, 939 (5th Cir. 2008); See also Christophersen v. Allied-Signal Corp., 939 F.2d 1106, 1127 (5th Cir. 1991) *abrogated on other grounds* Daubert v. Merill Dow Pharmaceuticals, 509 U.S. 579, 585, n. 5 (1993)["If the record establishes a critical fact contrary to the expert's testimony or if a court may take judicial notice of a fact that fatally contradicts the assumptions of the expert, then his or her testimony ought to be excluded."]; Allergan Sales, LLC v. Teva Pharmceuticals USA, Inc., 2017 WL 4800734 p. (E.D. Tex. 09/28/2017)[If testimony is not supported by or conflicts with the evidence on which it is based, it is nothing more than conclusory expert testimony.].

conflicts with Hollies's deposition testimony, the report is not relevant. Relevancy in the context of an expert opinion is determined by whether "[t]he expert testimony proffered in this case is sufficiently tied to the facts of the case [so] that is will aid [the finder of fact] in resolving a factual dispute."[45] Again, as stated above, Hollies testified that the stairs were not too steep and that he was able to put his whole foot on the steps. Further, Hollies's supervisor also testified that the crew had used the stairway several times that day without incident. Therefore, Borison's assumptions underlying his opinions which directly contradict Hollies's testimony render his report and prospective testimony inadmissible.

In addition, Borison's reliance on 46 C.F.R. §108.159 does not make his report "expert" or admissible. First, and foremost, regulations under Title 46 Subchapter I-A only apply to the "design, construction, equipment, inspection and operation of mobile offshore drilling units operating under the U.S. flag."[46] However, the DISCOVERER INDIA was built in South Korea and is flagged in the Marshall Islands.[47]

---

[45] Daubert v. Merill Dow Pharmaceuticals, 509 U.S. 579, 591 (1993).

[46] 46 U.S.C. §107.01.

[47] See Exhibits G and H.

It is not a United States Coast Guard inspected vessel and Title 46 simply does not apply.[48]

This is not the first time Borison has been excluded for citing to inapplicable regulations. In Thomas v. Global Explorer, LLC, his report and testimony were excluded as intruding on the common sense of the fact finder despite the inclusion of citation to OSHA regulations.[49] As other courts have held, reliance on inapplicable regulations and standards is grounds for exclusion.[50]

Moreover, even if the cited regulation was applicable, there is no need for "expert" testimony. The average fact finder should be able to determine from the evidence presented whether any applicable regulations were violated without such testimony.[51] Borison simply looked at the photographs in the power point presentation and then compared the measurements to the regulation. Anyone can do that. Further, if Spencer Ogden's liability was based on the meaning of words in the cited regulations, the decision

---

[48] Further, to the extent Borison relies on standards promulgated by the American Bureau of Shipping ("ABS"), ABS standards set forth in the "Guidance Notes for the Application of Ergonomics to Marine Systems" are not legislative enactments, nor are they laws or regulations. Cole v. Noble Drilling Corp., 2007 Wl 2475944 p. 3 (S.D. Miss. 08/28/2007). In addition, to the extent that ABC standards have any benefit as an industry standard, they are not applicable because the DISCOVERER INDIA was classed by Det Norske Veritas - an entirely different classification society with its own standards.

[49] 2003 WL 943645 p. 2 (E.D. La. 03/03/2003) *citing* Araujo v. Treasure Chest Casino, LLC, 1999 WL 219771 (E.D. La 04/14/1999).

[50] Francois v. Diamond Offshore Co., 2013 WL 654635 p. 4 (E.D. La. 02/21/2013); Robertson v. Cal Dive Int'l, Inc., 2006 WL 1968917 p. 4 (E.D. La. 07/12/2006).

[51] Theodile, 2006 WL 1751226 at p. 3.

is one of law which must be made by the court and is inadmissible as expert testimony.[52] Therefore, any opinion by Borison that the design of the stairs in any way violated regulations is simply inadmissible.

Borison's second opinion is that Hollies was not trained how to safely descend the stairway (or, incline ladder, as Borison characterizes it). However, first, there is no duty to instruct an experienced seaman on matters within common sense, how to perform a routine task, or to remind him of what he already knew or should have known.[53] Second, Borison does not identify the authoritative basis of his opinion other than his own *ipse dixit*. He cherry picks certain sections from Transocean's Operational Integrity and Health, Safety & Environmental Policies which are clearly inapplicable. Keep in mind that Hollies lost his footing and fell while descending either a stairway or an interior incline ladder. (Borison admits that it "appeared to be a stairway.").[54] However, it was manifestly not a "fixed vertical ladder" so Borison's recitation to Section 5 Subsection 4

---

[52] Stissi v. Interstate Ocean & Transport Co.,, 765 F.2d 370, 374 (2nd Cir. 1985)[nautical rules and regulations]; See also Mola Development Corp. v. U.S, 516 F.3d 1370, 1379 n.6 (Fed. Cir. 2006)[FIRREA]; Pelletier v. Main Street Textiles, 470 F.3d 48, 54 (1st Cir. 2006)[OSHA]; Southern Pine Helicopters, 320 F.3d at 841[FAA]; Rumsfield v. United Techs. Corp, 315 F.3d 1361, 1369 (Fed. Cir. 2003)[cost accounting standards]; Bammerlin v Navistar Int'l Transp. Corp., 30 F.3d 898, 700 (7th Cir. 1994)[federal motor vehicle safety standards]; CFM Communications, LLC v. Mitts Telecommunications Co., 424 F.Supp.2d 1299, 1234 (E.D. Cal. 2005)[FCC].

[53] Glaze v. Higman Barge Lines, Inc., 611 Fed.Appx. 227, 228 (5th Cir. 2015); Patterson, 137 Fed.Appx. at 637; Webre v, Azalea Fleet, Inc., 2005 WL 711608 p. 3 (E.D. La. 03/23/2005)[internal citations omitted].

[54] Exhibit A, page 11.

Paragraph 4.5 is a red herring. In addition, Hollies was walking down the stairs, he was not "working at height" so Borison's citation to Section 5 Subsection 4 Paragraph 4.1 is equally unavailing. Last, even if the stairway was a "fixed vertical ladder" so that the requirement for "three points of contact" in paragraph 4.5 applied, "three point contact" means that three of the climber's four limbs are in contact with the ladder at all times - either two feet and one hand or two hands and one foot.[55] Applying this technique to the facts of this case, Hollies was maintaining three points of contact, despite the fact that he was facing away from the steps. Specifically, his feet were on the stairs and, as he testified, his right hand was on the handrail. Nothing would have been different if he had been turned around.

In summary, Borison's report and prospective testimony should be excluded, *inter alia*, because they would "intrude upon the domain of common sense matters upon which the Court requires no expert assistance."[56] Nothing in the report (or in the prospective testimony) requires expertise, and the report will not assist the Court in its role as the trier of fact.[57] Further, the report is based on inapplicable regulations, standards, and safety rules.

---

[55] EEOC v. BNSF Railway Co., 853 F.2d 1150, 1154 (10th Cir. 2017); Cook v. Navistar Int'l Transp. Corp., 940 F.2d 207, 209 (7th Cir. 1991); Whitmire v. Terex Telelect, Inc., 390 F.Supp.2d 540, 551 (E.D. Tex. 2005).

[56] Roy v. Florida Marine Transporters, Inc., 2004 WL 551208, p. 3 (E.D. La03/18/2004)[Excluding the report of Robert E. Borison]; Thomas v. Global Explorer, LLC, 2003 WL 943645, p. 2 (E.D. La. 03/03/2003)[Excluding the report of Robert E. Borison].

[57] Marshall v. Supreme Offshore Services, Inc., 2011 WL 6258487 p. 2 (E.D. La. 12/15/2011)[Excluding the report of Robert E. Borison].

## Conclusion

The report and prospective testimony of Robert Borison should be excluded. This is a case involving a simple slip and fall down a flight of stairs. There is no need for any scientific, technical or specialized knowledge to explain the situation or assess liability. Further, the regulations and standards cited by Borison in his report are patently inapplicable to the DISCOVERER INDIA, and the safety rules cited are not applicable to the stairway at issue. Thus, Borison's opinions based on the regulations, standards, and rules will not aid the trier of fact.

WHEREFORE, Defendant Spencer Ogden, Inc. respectfully submits that the report and prospective testimony of Robert Borison should be excluded.

Respectfully submitted,

/s/ Cindy Galpin Martin
_____________________________________

RUFUS C. HARRIS, III (#6638)
ALFRED J. RUFTY, III (#19990)
CINDY GALPIN MARTIN (#25159)
HARRIS & RUFTY, L.L.C.
650 Poydras Street, Suite 2710
New Orleans, Louisiana 70130
Telephone: (504) 525-7500
Facsimile: (504) 525-7222
Attorneys for Spencer Ogden, Inc.

**Certificate of Service**

I hereby certify that the above and forgoing pleading was served on counsel of record by electronic means including the CM/ ECF system this 25th day of April, 2020.

/s/ Cindy G. Martin
____________________________________