UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RODERICK HOLLIES | CIVIL ACTION |
| VERSUS | NO. 19-11592 |
| TRITON ASSET LEASING GmbH, TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., SPENCER OGDEN, INC. and 6CATS INTERNATIONAL LIMITED | SECTION: "T" (3) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUSE REPORT AND TESTIMONY OF ROBERT BORISON**

MAY IT PLEASE THE COURT:

Plaintiff, Roderick Hollies ("Hollies"), through undersigned counsel, files the instant memorandum in opposition to the motions to exclude the report and testimony of Robert E. Borison ("Borison") filed by Spencer Ogden, Inc. ("Spencer Ogden")[1] and the Transocean defendants ("Transocean").[2] These defendants contend that this is a "simple case" and that expert testimony is not needed to assist the Court and/or jury. Hollies opposes these motions to exclude Borison and contends that while this case may appear to involve a "simple fall" as Spencer Ogden describes it, there is a great deal of contention surrounding whether the structure Hollies fell from was an inclined ladder or a stairway and what is required of the employer and vessel owner under these scenarios.

As will be shown herein, Borison's expertise in offshore safety, including ladder and stairway usage, the industry standards applicable to the use of these structures, and the necessary training required to properly ascend and descend these structures safety under these differing scenarios, would greatly assist the trier of fact in this case as these are not differences within the

[1] Rec. doc. 109.
[2] Rec. doc. 115.

common knowledge and understanding of the average juror. What may be within the common understanding of jurors is that there are many types of stairways and ladders; however, which are appropriate for specific uses and the appropriate manner of ascending and descending are not within the common knowledge and understanding of most people.

One example of this that comes to mind is a pull-down attic "stairway" that one might commonly see in a residence. Due to the angle of inclination, the measurements of the treads and risers and the type of handrails, such an apparatus is not a stairway at all. Borison's expertise in this area illustrates the differences between the various types of methods to transfer from one level to another on a vessel and the safe means by which to accomplish this. Further, because this case pertains to the use of these structures in an offshore environment, most jurors have little to know knowledge or experience concerning the industry standards for their usage or the training required from a safety perspective to properly and safely ascend and descend.

**Law and Argument**

Fed. Rule Evid. 702 states:

> [I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 essentially codifies the Supreme Court's decisions in *Daubert* and *Kumbo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L. Ed. 2d 238 (1999).

The Court's function under Rule 702 and *Daubert* is to act as a "gatekeeper" to ensure that the expert's testimony is "both reliable and relevant." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir, 2010). "This entails a preliminary assessment of whether the

reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* As to the reliability aspect, the Court's function "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert, 509 U.S. at 595.*

As the Fifth Circuit has noted, a Rule 702 inquiry into the reliability of expert testimony is a flexible and necessarily fact-specific inquiry. *Seatrax, Inc. v. Sonbeck Intl., Inc.*, 200 F.3d 358, 372 (5th Cir. 2000). The Fifth Circuit has also added to that rationale that "As a general rule, questions relating to the basis and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996), quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

The Court's gatekeeper function does not, however, replace the traditional adversary system and the place of the finder of fact within that system. *Daubert, 509 U.S. at 596.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* In general, issues relating to the bases and sources of an expert's opinion go to the weight given to the evidence, not the admissibility thereof, and should be left for the tier of fact to determine. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

Spencer Ogden cites two opinions wherein Borison's opinion was excluded; however, these two cases, *Thomas v. Global Explorer, LLC*, 2003 U.S. Dist. LEXIS 3365 (E.D. La. Feb 28, 2004) and *Roy v. Fla. Marine Transporters, Inc.*, 2004 U.S. Dist. LEXIS 4390 (E.D. La. March 18, 2004), do not support Spencer Ogden's argument. In *Roy*, for example, a case

wherein a man fell off of a milk crate on a vessel while attempting to sand an area overhead, the Court simply found that Borison's conclusions relating to the slippery nature of the surface in question required no expertise. The Court did, however find that his "testimony on industry safety standards that govern work from elevated platforms may assist the Court in this matter." *Id.* at p. 4. In *Thomas*, the Court excluded Borison's testimony; however, the Court did so on the basis that it involved common sense principles and would "intrude upon the domain of common-sense matters upon which jurors require no expert assistance." *Id.* at p. 5. *Thomas* involved allegations that a man's foot became entangled in loose rope affixed to a secured ladder.

Thus, both cases cited by Spencer Ogden involve cases wherein the common sense of the jurors required no expert assistance. In this case, Borison's opinion regarding the inclined ladder are not common-sense matters. Borison's experience and expertise is directly relevant to this issue. Borison has over 50 years of experience, including being the Manager/Supervisor of the Safety Department for Amerada Hess Corp., J. Ray McDermott, McDermott International, Inc. and as President/Owner of Contract Safety Consultants, Preferred Employees and Total Safety Services.[3]

***Inclined Ladder versus Stairway***

The defendants take issue with Borison's opinion that Hollies fell from an inclined ladder and not a stairway. Borison's opinion is that the vessel should have had a stairway in the port side cable trunk and not an inclined ladder. In reaching this conclusion, Borison relied upon his own expertise as well as photographs and measurements taken by Transocean and contained in their own incident report.[4] Borison opines that due to the 55° angle of inclination, as supplied by Transocean in their report, the structure would be considered an inclined ladder, not a vertical

---

[3] See Declaration of Robert E. Borison, attached as Exh. A.
[4] Rec. doc. 109-9.

ladder or stairway. Borison references, but does not rely upon, 46 C.F.R. 108.159, in support of his opinion that this classification is standard in the industry. The defendants complain that this C.F.R. is inapplicable; however, Borison is not citing this regulation as proof of a statutory violation, nor does he rely upon it in formulating his opinions. He is simply referencing it as support for his own opinion that this structure is, in fact, an inclined ladder.

The defendants also complain that Borison's report contradicts Hollies' testimony because Hollies had used this structure previously the same day and that he "did not report that the stairs were defective in any way or too steep."[5] However, Hollies' testimony, taken in full context, is as follows:

> Q. So these particular steps, describe them to me. I've never been on the rig. I've never seen the steps. Just tell me. About how many treads or actual steps did the stairway have?
>
> A. I can't be sure. You know, they're steep stairs, but, you know, basically, you know -- you know, we're just going up and down. Like I say, you know, we're working in a -- in a dark area. It's -- it's -- it's -- You know, the stairs, I don't know how many it is.
>
> Q. Okay. And did you ever complain to anybody that the stairs were steep?
>
> A. No.[6]

Defendants only cited the last question and answer from this part of Hollies' deposition; however, Hollies clearly stated that the "stairs" were "steep stairs." He simply did not report this. The fact that Hollies did not complain about this, something discussed by Spencer Ogden and Transocean in their motions, should not be surprising in view of Borison's opinions. Even Hollies did not recognize that this structure was an inclined ladder or that there was anything wrong with it. Had he been aware of the problem, he likely would not have used the inclined ladder. It is not, however, his job, but that of the vessel owner and his employer to provide a

[5] Rec. doc. 109-1 at p. 4.
[6] Rec. doc. 109-5 at p. 22 of 67.

seaworthy vessel and a safe place to work, respectively. The fact that Hollies did not have the knowledge and experience to differentiate between an inclined ladder and a stairway is significant as it further illustrates why a lay person needs an expert to explain the differences as well as the proper techniques and training required to use each safely.

Transocean even admits in their memorandum in support of their motion that there is a difference between the techniques used for stairways (trailing hand technique) versus vertical ladders (requires 3-point contact).[7] Transocean argues that Borison's report "seems to suggest" that if Hollies had known he was using an inclined ladder he would have known to use 3-point contact instead of trailing hand technique and even cited the fact that their own HSE Manual requires use of the trailing hand techniques on stairways.[8] The HSE Manual addresses only stairs and fixed vertical ladders[9] and is silent regarding inclined ladders; however, Transocean seems to agree that 3-point contact would be required for a "ladder."

***Failure to Train Hollies on Inclined Ladder Usage***

Borison opines that 3-point contact should have been utilized. He also, opines that for descending a ladder, one should face the ladder. Spencer Ogden makes the specious argument tat Hollies *was* using 3-point contact because his "feet were on the stairs."[10] This argument fails because one cannot maintain 3-point contact when descending from one rung of a ladder to another – or from one step to another for that matter – while using the trailing hand technique. Borison discusses in his report the fact that on this structure there were vertical supports on the handrail which would preclude the user from maintaining the trailing hand technique since these vertical supports would interrupt the user's grip on the handrail. Thus, the user cannot maintain

---

[7] Rec. doc. 115-1 at p. 6.
[8] Rec. doc. 115-1 at p. 6.
[9] See excerpts from HSE Manual, attached as Exh. B. at pp. 171 and 173-174.
[10] Rec. doc. 109-1 at p. 14.

a grip with both hands on the handrail while descending using this technique. If, however, one is facing the ladder while descending, as Borison opines is the correct method, then the hands and feet can be moved while maintaining 3-point contact by maintaining both hands in contact with the handrail while transitioning a foot to the next rung.

Even Transocean's HSE Advisor, Ray McClaughtery, testified that he was not 100% on the difference between a stairwell and an inclined ladder.[11] McClaughtery assisted the OIM (offshore installations manager) for Transocean in doing the measurements depicted in the accident report and testified that the OIM wanted to show the angle of inclination. [12] The defendants try to downplay the significance of the photographs made part of the incident report; however, the measurements were made by Transocean.

While Spencer Ogden cites the Court to cases for the proposition that one does not have to train an experienced seaman to do matters within Hollies' common sense, it is apparent that the difference between these structures was not within his common sense or even that of Transocean's HSE Advisor, Ray McClaughtery. If the HSE Adviser is not sure of the difference, how can knowledge of this difference be imputed to a subordinate employee such as Hollies as being within his common sense?

One of the photographs contained in Transocean's incident report shows a man descending the inclined ladder says "Below picture demonstrate probable position of the IP at the time of the incident."[13] Spencer Ogden, however, argues that this does not show how Hollies was descending. Clearly, the man in the photo, who is depicting Hollies' "probable" position, has his feet at an angle that appears to be almost completely sideways. Looking at this, coupled

[11] McClaughtery's deposition was only taken on May 1, 2020 due to scheduling difficulties and the transcript is not yet available; however, Hollies will supplement to add the referenced testimony as Exh. C as soon as it is available.
[12] Exh. C.
[13] Rec. doc. 109-9 at p. 5 of 5.

with the measurements taken by McClaughtery and the OIM, it would be impossible to place one's entire foot in the direction facing the bottom of the incline ladder. Borison estimates the usable tread depth to be 5", considerably less that Hollies' size 12 workboots.

**Conclusion**

A fall from a ladder is not necessarily a simple matter within the common understanding of jurors. Borison has the benefits of over 50 years of experience in the safety aspects of offshore work, including extensive expertise in HSE manuals, training and the use of various types of ladders and stairways and the proper applications for each in the offshore industry. Borison's report and testimony would be of use to the tiers of fact in this case. To the extent that defendants believe that Borison's opinions are so simplistic as to be unwarranted and that he is a "cottage industry expert," they are more than capable of the vigorous type of cross-examination to bring out these points at trial. For these reasons, Hollies would respectfully urge the Court to deny Spencer Ogden's motion to exclude the report and testimony of Robert Borison.

Respectfully Submitted,

/s/ Kristi A. Post

Lawrence Blake Jones (7495)
Kristi A. Post (17752) – T.A.
BLAKE JONES LAW FIRM, LLC
701 Poydras Street, Suite 4100
New Orleans, Louisiana 70112
Telephone: (504) 525-4361
Facsimile: (504) 525-4380
*Attorneys for Roderick Hollies*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by electronic mail, facsimile and/or by depositing same in the United States Mail, postage prepaid and properly addressed, this 5th day of May, 2020.

/s/ Kristi A. Post
Kristi A. Post