UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODERICK HOLLIES                           CIVIL ACTION NO: 19-11592

VERSUS

SECTION: T

TRITON ASSET LEASING GMBH,
TRANSOCEAN OFFSHORE
DEEPWATER DRILLING, INC.,
SPENCER OGDEN, INC., AND 6CATS
INTERNATIONAL, LIMITED

## ORDER

Before the Court is a Motion for Summary Judgment[1] filed by 6CATS International, Limited ("6CATS"). Spencer Ogden, Inc. ("Spencer Ogden") has filed an opposition,[2] and Roderick Hollies ("Plaintiff") has filed an opposition.[3] For the following reasons, the Motion for Summary Judgment[4] is **GRANTED.**

## BACKGROUND

This matter arises out of injuries sustained by Roderick Hollies while working as a roustabout on the vessel D/S Discoverer India. Hollies initiated this action against Spencer Ogden, 6CATS, Triton Asset Leasing GmbH, and Transocean Offshore Deepwater Drilling, Inc. asserting claims under the Jones Act and general maritime law. On April 23, 2018, while assisting the marine crew, Hollies fell while descending a stairway on the vessel. He was initially treated on board while the vessel returned to Brazil and was taken from the vessel to a hospital in Brazil on April 27, 2018 to receive treatment to stabilize him sufficiently for repatriation to the United States.

---

[1] R. Doc. 72.
[2] E. Doc. 75.
[3] R. Doc. 76.
[4] R. Doc. 72.

1

Hollies was hired by Spencer Ogden and had worked with Spencer Ogden in the past on various occasions. When Hollies worked international jobs, Spencer Ogden would refer Hollies to a separate company, in this case 6CATS, to handle the processing of his earnings. Hollies would submit his Spencer Ogden timesheet to 6CATS who then generated an invoice back to Spencer Ogden in the same amount. Once the time sheet is approved and the funds paid by Spencer Ogden to 6CATS, 6CATS would remit the funds to Hollies for a flat fee. Spencer Ogden and 6CATS each executed a contract entitled "Terms of Business for the Supply of an Independent Contract," which detailed the terms of the agreement between Spencer Ogden and 6CATS.[5]

6CATS received an "Assignment Schedule for the Supply of an Independent Contractor" for Hollies.[6] In Hollies' Assignment Schedule, the terms of employment are set out as having been presented by Spencer Ogden and agreed to by Hollies. The Assignment Schedule details the vessel assigned to, the start and stop dates, the notice periods for termination (which rights are reserved only to Transocean and Spencer Ogden) and the rate of pay, all of which were agreed to between Spencer Ogden and Hollies. When 6CATS received the Assignment Schedule from Spencer Ogden, 6CATS took the information and inserted it into its Payment Processing Contract form which was then sent to Hollies for review and execution. Hollies was to then review the information, ensure its correctness, and provide 6CATS with the authority it needed to work as Hollies' agent. Hollies electronically executed the Payment Processing Contract on May 10, 2018.

6CATS has now moved for summary judgment seeking dismissal of Hollies' claims against 6CATS contending that 6CATS did not hire or employee Hollies. 6CATS contends that the summary judgment evidence establishes that 6CATS was only Hollies' payment processor and is not a Jones Act employer. Because Hollies did not sign the Payroll Processing Contract until

---

[5] R. Doc. 75-2.
[6] R. Doc. 72-4.

May 10, 2018, 17 days after the accident, Hollies contends that there is an issue of fact as to when the Payroll Processing Contract became effective. Spencer Ogden contends that 6CATS agreed that 6CATS was Hollies' employer in the "Terms of Business for the Supply of an Independent Contract." Therefore, Spencer Ogden and Hollies contend 6CATS motion for summary judgment should be denied.

## LAW AND ANALYSIS

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[8] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[9]

The Jones Act "create[s] a negligence cause of action for ship personnel against their employers."[10] A Jones Act claim requires proof of an employment relationship either with the owner of the vessel or with some other employer who assigns the worker to a task creating a vessel connection.[11] The employer need not be the owner or the operator of the vessel.[12] Independent contractors may be liable under the Act.[13] And a third person who borrows a worker may become

---

[7] Fed. R. Civ. P. 56(a).
[8] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).
[9] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[10] *Johnson v. GlobalSantaFe Offshore Servs., Inc.,* 799 F.3d 317, 324 (5th Cir.2015) (*citing Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 843 (5th Cir.2005); *see also* 46 U.S.C. § 30104).
[11] *See Guidry v. S. La. Contractors, Inc*., 614 F.2d 447, 452 (5th Cir.1980) (*citing Spinks v. Chevron Oil Co.,* 507 F.2d 216, 224 (5th Cir. 1975)).
[12] *Id.* (*citing Barrios v. Louisiana Construction Materials Co*., 465 F.2d 1157 (5th Cir. 1972)).
[13] *Id.*

his employer if the borrowing employer assumes enough control over the worker.[14] However, even if a seaman is deemed to be a borrowed servant of one employer, this does not automatically mean that he ceases to be his immediate employer's servant for Jones Act purposes.[15]

In this case, there is no summary judgment evidence establishing the factors that would support a finding of an employment relationship. There is no evidence that 6CATS had the right to direct Hollies' work or control the details of Hollies' work.[16] Additionally, there is no evidence that 6CATS hired or had the right to fire Hollies.[17] There is no evidence that 6CATS controlled the vessel or had any relationship with the vessel.[18] Indeed, the summary judgment evidence supports that 6CATS had no right to direct Hollies' work, to fire Hollies, or had any relationship with the vessel.[19]

Hollies testified that Spencer Ogden set his daily rate of pay, recruited him for the job, provided him with employment documents, sent him to undergo pre-hire physical examinations for the job, and told him where to report for work.[20] Hollies further testified that he had no contact with 6CATS, no interaction with 6CATS while working on the vessel, and did not report to anyone from 6CATS regarding his employment.[21] 6CATS did not provide Hollies with any training and any direction as to how to perform his job.[22]

Hollies and Spencer Ogden point to contractual provisions in support of their position that there are undisputed material facts regarding whether 6CATS agreed to be Hollies' employer. However, after reviewing the "Terms of Business for the Supply of an Independent Contract," the

---

[14] *Id. (citing Ruiz v. Shell Oil Co.,* 413 F.2d 310 (5th Cir. 1969)).
[15] *Id.* (*citing Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975))..
[16] *United States v. W.M. Webb, Inc.,* 397 U.S. 179, 192, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970).
[17] *Id.*
[18] *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir.1977).
[19] R. Doc. 72-3.
[20] R. Doc. 72-15, pp.167-168.
[21] R. Doc. 72-15, p. 171.
[22] R. Doc. 72-15, p. 171.

Court finds that the provisions do not give rise to any dispute of material facts regarding the relationship between 6CATS and Hollies. The "Terms of Business for the Supply of an Independent Contract" provides that Spencer Ogden was hiring 6CATS as an independent contractor.[23] It does not provide that 6CATS agreed to become Hollies' employer or that Spencer Ogden was transferring obligations of employment to 6CATS. Additionally, the Payroll Processing Contract signed by Hollies specifically states that it is "a Contract for payment processing services and under no circumstances should it be interpreted as a contract of employment."[24] Therefore, the Court finds that the contracts governing the relationships in this case further establish that the parties did not intend for 6CATS to be Hollies' employer.

## CONCLUSION

Accordingly, **IT IS ORDERED** that the Motion for Summary Judgment[25] filed by 6CATS International, Limited is **GRANTED**, and the claims of Roderick Hollies against 6CATS International, Limited are **DISMISSED WITH PREJUDICE**.

**New Orleans, Louisiana**, on this 3rd day of November, 2020.

**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**

---

[23] R. Doc. 75-2, Section 2.1.
[24] R. Doc. 72-5.
[25] R. Doc. 72.